# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MENELAUS WATSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | )  Case No. 15 C 700 |
| CLAUDE OWIKOTI and DR. EVARISTO AGUINALDO, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Menelaus Watson was incarcerated at the Illinois Department of Corrections' Northern Reception and Classification Center (NRC) from September 22, 2014 through March 24, 2015. Back in 2008, Mr. Watson suffered a gunshot wound in his back, and he has suffered from chronic pain ever since. He contends that he did not get appropriate treatment for this pain while at the NRC. Mr. Watson has sued Claude Owikoti, a physician's assistant, and Dr. Evaristo Aguinaldo, a physician, alleging that they violated his Eighth Amendment rights by their deliberate indifference to his serious medical needs. The Court recruited counsel, Deanna Kunze and Maureen Mullen of Nixon Peabody LLP, to represent Mr. Watson and thanks them for their diligent prosecution of this case on Mr. Watson's behalf.

Discovery has been completed, and the case is set for trial in mid-October 2017. Mr. Owikoti and Dr. Aguinaldo have moved for summary judgment. Mr. Owikoti and Dr. Aguinaldo contend that Mr. Watson lacks evidence from which a reasonable jury could

find in his favor.  They also contend that Mr. Watson failed to exhaust administrative remedies before filing suit as required by the Prison Litigation Reform Act (PLRA).  The Court will address these points in the same order in which defendants have made them.

**Facts**

Before being imprisoned, Mr. Watson was prescribed hydrocodone and a muscle relaxant for his back pain.  IDOC records reflect that when he arrived at the NRC in late September 2014, Mr. Watson told IDOC staff that he was taking Tylenol (and only Tylenol) for his back pain.  Mr. Watson says this is untrue.

On October 15, 2014, Mr. Watson filed a grievance stating that "[t]he medical attention here is very poor.  They refuse my sick call."  But his grievance referenced chest pain and rashes, not back pain.  A counselor's response to the grievance, inexplicably dated six weeks later, November 28, 2014, says that the grievance had been forwarded to the health care unit for review.

On November 21, 2014, Mr. Watson filed another grievance.  This one specifically referenced his gunshot wound and his back pain.  He stated, "I got a gun shot wound in my back an[d] I have been seeking medical attention since I've been here at Stateville NRC.  . . .  I was currently taking pain medication in the world for my back.  Now I'm incarcerated.  My back is in very bad pain [and] I can't get any medical attention."  A counselor's response to this grievance, dated November 27, 2014, likewise stated that it had been forwarded to the health care unit for review.

Mr. Watson saw Mr. Owikoti on one occasion, on December 17, 2014.  Records that Mr. Owikoti prepared state that Mr. Watson complained only of a rash on his lower back, and Mr. Owikoti has testified that he routinely asks each patient's current

complaints and records what they say. Mr. Watson says that he told Mr. Owikoti about his back pain "and explained to him that I was on medication for my back before I got incarcerated." Watson Dep. at 68. Mr. Owikoti prescribed an antibiotic for the rash but nothing for the back pain (he says that Mr. Watson said nothing about back pain). According to Mr. Watson, Mr. Owikoti "didn't want to believe me" and "said he couldn't help me." *Id.* at 68, 70.

On January 8, 2015, Mr. Watson filed another grievance. He said that he had submitted earlier grievances "about me not getting the proper medical attention for my back injury. . . . I been in back pain since I've been incarcerated at Stateville with no help. I was taking medication for my back when I was out [in] the world. Doctor [sic] Owikoti denied me medication for my back 12-17-14." He asked for "proper medical attention." A counselor's response, dated January 15, 2015, somewhat cryptically stated, "Answered this grievance on HCU" (the health care unit).

Mr. Watson saw Dr. Aguinaldo once, on February 24, 2015. It appears to be undisputed that Mr. Watson reported his back pain to Dr. Aguinaldo. Dr. Aguinaldo testified, and records reflect, that he prescribed Motrin for Mr. Watson and counseled him to do exercises. He did not order an x-ray. He testified this was because there were no objective findings that warranted an x-ray. Mr. Watson testified that Dr. Aguinaldo prescribed Tylenol.

A grievance officer's March 2, 2015 report regarding Mr. Watson's October and November 2014 grievances states, "Inmate complains of back pain from a GSW" (gunshot wound). The report further states that Mr. Watson "was seen by Dr. Augie [sic] on 2/24/15 for his back pain. He had no pain when doing range of motion. He was

given Tylenol [sic] for 10 days and was told to follow up as needed."

Medical records reflect that Mr. Watson saw another doctor—unidentified—at the NRC on March 13, 2015. Records reflect that the doctor found "tenderness" in the right mid-back area "over [an] old wound." The same records reflect that the doctor prescribed Tramadol (a pain killer) and Robaxin (a muscle relaxant). Not too long after that, Mr. Watson was transferred to another prison.

## Discussion

**1.    Merits**

Mr. Watson's claim against each of the defendants requires him to show that the defendant was deliberately indifferent to a serious medical need. This requires Mr. Watson to show that he had an objectively serious medical condition and that the defendant was aware of and consciously disregarded a risk to his health or safety. *See, e.g., Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011). Defendants do not argue in their motion for summary judgment that Mr. Watson's claimed condition was insufficiently serious. Rather, their arguments focus on the deliberate indifference requirement.

Mr. Watson cannot sustain a claim against Dr. Aguinaldo. Dr. Aguinaldo saw Mr. Watson only once. It is undisputed that he examined Mr. Watson and prescribed medication. The medication may not have been sufficient to relieve Mr. Watson's pain, but there is no evidence from which a reasonable jury could find that Dr. Aguinaldo was subjectively aware of this and did not care. Nor has Mr. Watson offered any evidence that Dr. Aguinaldo did anything that was outside of standard protocols. *See generally Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016). "Deliberate indifference is more

than negligence and approaches intentional wrongdoing." *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (internal quotation marks omitted). Mr. Watson has offered no evidence from which a reasonable jury could find this with regard to Dr. Aguinaldo.

The opposite is true with regard to Mr. Watson's claim against Mr. Owikoti. A reasonable jury could believe Mr. Watson's testimony about what he told Mr. Owikoti, specifically that he suffered from severe back pain and had been on medication while "in the world" (i.e. before being imprisoned) but was now getting nothing. A reasonable jury could also believe Mr. Watson's testimony that Mr. Owikoti basically brushed him off and said he could do nothing for him. A reasonable jury could find, based on this and other evidence, that Mr. Owikoti was aware of and consciously disregarded a risk to Mr. Watson's health, by refusing to prescribe any medication for his severe pain.

**2.    Exhaustion**

Defendants argue—*after* addressing the merits—that Mr. Watson failed to satisfy the PLRA's exhaustion requirement. Regarding Mr. Watson's claim against Dr. Aguinaldo, defendants argue that Mr. Watson never filed a grievance regarding Dr. Aguinaldo's allegedly deficient treatment. This argument is moot given the Court's ruling that Mr. Watson cannot sustain a claim against Dr. Aguinaldo.

With regard to Mr. Watson's claim against Mr. Owikoti, the Court concludes, first, that defendants have forfeited their exhaustion defense by sitting on their hands for so long. They essentially did nothing other than plead the defense in their answer to Mr. Watson's complaint. The Seventh Circuit has long made clear that resolution of PLRA exhaustion issues typically should precede merits discovery, let alone any ruling on the merits. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *see also, Wagoner v.*

*Lemon*, 778 F.3d 586, 588 (7th Cir. 2015). The evidence supporting the exhaustion defense was in defendants' hands; all the Court had was defendants' assertion in their answer of a one-sentence, conclusory reference to exhaustion and a citation of *Pavey*. *See* Defs.' Answer, dkt. no. 55, at 8. But defendants did nothing—*nothing*—to press the issue before or even during the process of discovery. Rather, they pressed the defense for the first time in their motion for summary judgment filed after discovery, only about two months before trial and after the case had already been set for trial. As other district judges in this circuit have concluded in similar circumstances, defendants' failure to press the defense or seek a court ruling until virtually the eleventh hour, after merits discovery was completely done and the case was set for trial, resulted in forfeiture. *See, e.g., Sutton v. Ghosh*, No. 10 C 08137, 2014 WL 5461663, at *8 n.12 (N.D. Ill. Sept. 16, 2015) (Tharp, J.); *Jones v. Grubman*, No. 06-CV-0330, 2009 WL 3049216, at *1-2 (S.D. Ill. Sept. 18, 2009) (Reagan, J.) (citing, among other cases, *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007), and *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296 (7th Cir. 1993)).

That aside, Mr. Owikoti's exhaustion defense lacks merit. Mr. Watson filed a grievance on January 8, 2015 regarding Mr. Owikoti's claimed refusal to treat his back pain. Prison officials say they dealt with this grievance "on the health care unit"—specifically by getting Mr. Watson to Dr. Aguinaldo, a visit that took place on February 24, 2015. Defendants argue that Mr. Watson should have appealed further, but at that point Mr. Watson had gotten what he was looking for, specifically, treatment of his back by a physician. There was nothing more that Mr. Watson's grievance *against Mr. Owikoti* could have gotten him. As the Seventh Circuit has stated, "the defendants'

6

notion that [plaintiff] should have appealed to higher channels after receiving the relief he requested in his grievances is not only counter-intuitive, but it is not required by the PLRA." *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005).[1]

## Conclusion

For the reasons stated above, the Court grants summary judgment in favor of defendant Evaristo Aguinaldo but denies defendants' request for summary judgment in favor of defendant Claude Owikoti. The case remains set for a status hearing on Monday, September 25, 2017 at 8:45 a.m. Lead trial counsel for each side are directed to appear.

Date: September 21, 2017

_____
MATTHEW F. KENNELLY
United States District Judge

---

[1] Defendants also suggest that Mr. Watson jumped the gun by filing this suit before the grievance process was finished. That is incorrect, because (as the Court has indicated) Mr. Watson's grievance had obtained the sought-for result at that point, making further appeals unnecessary. But even if defendants are right that Mr. Watson should have continued to appeal, this is not a basis for dismissal. If defendants had pressed their exhaustion defense in a timely fashion as they should have, Mr. Watson would have been able to dismiss his case, complete the grievance process, and refile the suit. By the time defendants actually pressed the defense, it was too late to do that, as the applicable time limits on grievance appeals had run. Defendants cannot appropriately benefit from their own dilatory actions in pursuing the defense.